## WALDO T. PEIRCE & another *vs.* SIMON PENDAR.

Where the indorser and holder of a note reside in the same place where the note is dishonored, notice of the dishonor must be given to the indorser personally, or at his domicil or place of business, and not through the post office.

P. went with his family to Bangor, in the autumn of 1835, and lived at board, with his family, in different houses in that place, until the autumn of 1836: During this time, P. was often absent on business, and once took his family, for some weeks, to another place: He had a place of business in the counting room of W. & R., and no other place of business in Bangor; and his papers were left, during his absence, in the care of W., and were not taken away till the autumn of 1836: On the 26th of July 1836, a note, which was indorsed by P., fell due and was dishonored, at Bangor, by the maker's refusal to pay it; and it did not appear whether P. was or was not in Bangor, on that day. *Held,* that P., on said 26th of July, had a domicil and place of business in Bangor, at one of which, if he was then absent, notice of the dishonor of the note should have been left.

A note payable to P. or order, and indorsed by P. & R. was lodged in a bank in the city of B. where the maker and the indorsers had a domicil when the note fell due: The note was presented, by a notary public, to the maker for payment, which was refused; whereupon the notary made out a notice for P., directed to him at B., and put it into the post office at B.: In a suit by the holder of the note against P. as indorser, the notary testified that he " was not able to find P. or any body who could tell him where he was; that he inquired of the cashier of the bank, and others, for P.'s residence, but was unable to learn from any one where he then resided:" He did not, however, make any inquiry of the maker or second indorser respecting P.'s residence. *Held,* that the notary had not used that reasonable diligence to ascertain P.'s residence which would excuse the want of legal notice to him of the dishonor of the note.

ASSUMPSIT on a promissory note, dated at Bangor, July 23d 1835, signed by William Bradbury, for $2177·50, payable to the defendant, or order, in one year from date, and interest, and indorsed in blank by the defendant and by Robert M. N. Smyth of Bangor.

It appeared at the trial before *Wilde,* J. that the note, when it fell due, was in the Mercantile Bank at Bangor; that it was presented to the maker for payment, by a notary public, who, upon the maker's refusal to pay it, made out a written notice, in due form, addressed to the defendant, at Bangor, and placed the same in the post office at that place.

Peirce & another *v.* Pendar.

The plaintiffs introduced the deposition of the notary, who deposed, that the note was put into his hands on the 26th of July 1836 ; that he, on that day, presented it to Bradbury, the maker, for payment, who " declined paying " ; that he then " made a notification to Simon Pendar ; but not being able to find him, or anybody who could tell where he was, or where he resided," he " directed the notice to him, and put it into the post office at Bangor, directed to him at Bangor : " That at the time when the note was put into his hands, to be protested, he inquired of the cashier of the Mercantile Bank, and of others, for Pendar's residence, but was " unable to learn from any one where he then resided."

In answer to cross interrogatories, said notary deposed, that he had no personal knowledge of the residence of said Pendar, in 1836, and did not know that Pendar had any place of business in Bangor, in that year.

The plaintiffs also introduced the depositions of William Smyth and John Bright of Bangor.

William Smyth deposed, that the defendant came to the deponent's house in Bangor, on a visit, in the autumn of 1835, with his wife and child, and remained with his wife and child, about three months, and then went to the Franklin House in Bangor, with his family, and remained there a short time ; that he then went to another public house in Bangor, to board, with his family ; and then went to board at the house of J. E. Cadmus, in Bangor, where he left his family, while he went to New York, in May or June 1836 ; that, when he returned from New York, he took his family to Belfast, where he remained some weeks, and returned to Bangor, in August 1836, and " stopped at Cadmus's " ; that he afterwards took his family to Portsmouth in New Hampshire : That the defendant, in the spring of 1836, " had a bond of the Bowdoin College townships, and was trying to effect a sale of them ; and was back and forth, part of the time here," [at Bangor,] " and part of it in Boston, part of it in New York and other places, attempting to make sale of said townships : " That in 1836, the defendant's papers were left in the counting room of the deponent, and his brother Robert

30 *

M. N. Smyth, in Bangor, where the defendant "usually did his writing, when in Bangor ; " and that the deponent knew " of no other place of business, he had, except there, in Bangor, in 1836 : " That all the defendant's papers were left in the deponent's care and kept in the deponent's desk, and were not removed until late in the autumn of 1836 : That when the defendant went to Belfast, as above mentioned, the deponent "understood him that it was uncertain whether he should come back or not. He was unstable in regard to his family and had no fixed residence." The deponent was certain, (from a circumstance which he stated,) that the defendant's family was in Bangor, on the 4th of July 1836 ; but he could not state whether or not the defendant was himself there during any part of July in that year.

John Bright deposed, that he was chief clerk in the post office at Bangor, from 1829 to 1839 ; that the defendant had a box in that office, in 1836, and that quarterly bills were made out to him from January 1836 to January 1837 ; that the deponent did not know the defendant's place of residence, and " understood he was moving about from place to place — a kind of speculator, here today, and there tomorrow ; " that he was such a man, that " you did not know when he was here, or when he was away. Sometimes he was gone, and when he got back, he had letters and papers in his box. Once he was gone a long time."

On this evidence, the judge advised a nonsuit, which was entered, subject to the opinion of the whole court.

*Lunt*, for the plaintiffs. The only question in the case is, whether due diligence was used to give the defendant notice of the dishonor of the note. The case is *sui generis*. The defendant had no fixed residence, and nobody in Bangor could tell where he was, or where his domicil or place of business was, on the 26th of July 1836. The question of diligence is settled by the circumstances of each particular case. *Williams* v. *Bank of U. States*, 2 Pet. 102. Chit. on Bills, (Amer. ed. of 1809,) 201, 202. Bayley on Bills, (1st Amer. ed.) 180. *Sturges* v. *Derrick*, Wightw. 76. *Eagle Bank* v. *Chapin*, 3 Pick. 180.

It should have been left to the jury to decide whether due dili
gence had been used to find out the defendant's place of resi-
dence. *Bateman* v. *Joseph*, 12 East, 433.

If the defendant had been a resident of Bangor, the notice,
left in the post office there, might not have been sufficient to
charge him. But if the plaintiffs were not bound to give any
notice, that which they did give cannot harm them.

*N. J. Lord*, for the defendant. The evidence shows that
the defendant's residence was in Bangor, when the note fell due.
If so, then the notice, put into the post office, was insufficient.
Bayley on Bills, (2d Amer. ed.) 277, and cases cited in *note*
(q). *Stephenson* v. *Primrose*, 8 Porter, 155. *Foster* v. *Mc-
Donald*, 3 Alab. 34. *Davis* v. *Gowen*, and *Fish* v. *Jackman*,
1 Appleton, 447, 467.

The evidence would not have warranted a jury to find that
due diligence was used to ascertain the defendant's residence.
*Beveridge* v. *Burgis*, 3 Campb. 262. By the law of Maine,
where this note was made and was dishonored, the holders, if
they did not know the defendant's place of residence, were
bound to inquire of the other parties to the note. *Hill* v. *Var-
rell*, 3 Greenl. 233. And they cannot recover in this State,
without doing all that was necessary to entitle them to recover
in Maine. *Williams* v. *Wade*, 1 Met. 82.

SHAW, C. J. This was assumpsit by the indorsees against the
indorser of a promissory note, payable in one year from date.
The question is, whether the indorser had due notice of the dis-
honor of the note, by a notice in writing addressed to him at
Bangor, by the notary public, and deposited in the post office at
that place.

We are satisfied by the evidence, which is submitted and
made part of the case, that the defendant, at the time this note
became due, had his domicil and also a place of business in
Bangor, and that by the use of reasonable diligence, this might
have been ascertained ; and that the notary made no inquiries of
the other parties to the note, or otherwise used due diligence to
ascertain the residence of the indorser.

The only remaining question then is, whether notice by the

post office was sufficient. The *general rule* * certainly is, that when the indorser resides in the same place, with the party who is to give the notice, the notice must be given to the party personally, or at his domicil, or place of business. *Ireland* v. *Kip,* 10 Johns. 490, and 11 Johns. 231. *Smedes* v. *Utica Bank,* 20 Johns. 372. *Lindenberger* v. *Beall,* 6 Wheat. 104. *Shedd* v. *Brett,* 1 Pick. 401. *Davis* v. *Gowen,* 1 Appleton, 447. *Shepard* v. *Hall,* 1 Connect. 329. Perhaps a different rule may prevail in London, where a penny post is established and regulated by law, by whom letters are to be delivered to the party addressed, or at his place of domicil or business, on the same day they are deposited. *Scott* v. *Lifford,* 9 East, 347. And perhaps the same rule might not apply, where the party to whom notice is to be given lives in the same town, if it be at a distinct village or settlement, where a town is large, and there are several post offices in the different parts of it. But of this we give no opinion.

In the present case, the defendant had his residence and place of business in the city of Bangor, and the only notice given him was by a letter, addressed to him at Bangor, and deposited in the post office at that place. And we are of opinion that this was insufficient to charge him as indorser

*Nonsuit confirmed.*

---

* See *Eagle Bank at Providence* v. *Hathaway, ante,* 212.